In re Sue Kathleen MATTHEWS f/k/a Sheffield, Debtor.

**Bankruptcy No. NG 80–00217.**

United States Bankruptcy Court, W. D. Michigan.

Feb. 25, 1981.

Bankruptcy Law Clinic, P. C., Murray B. DeGroot, Grand Rapids, Mich., for debtor.

## OPINION

DAVID E. NIMS, Bankruptcy Judge.

### FACTS

On January 25, 1980, debtor filed her petition for an order for relief under Chapter 13 of Title 11 of the U. S. Code. The debtor did not testify and, therefore, all facts must be taken from the Chapter 13 Statement and proofs of claim. Debtor is divorced and has a two year old child. She is employed under the C.E.T.A. program and receives $537.00 per month. She pays $45.00 a month to the Ottawa County Friend of the Court for child support. Her other expenses do not appear unusual except for an unexplained $50.00 "miscellaneous" expense. She purposes to pay $157.00 each month, which will exhaust all of her earnings. Debtor discloses the following assets:

| | |
|---|---|
| 1972 Ford Pinto – completely subject to lien | $ 100.00 |
| 1971 Chrysler – completely subject to lien | $ 250.00 |
| Usual household goods – exemption claimed | $1,420.00 |
| Jewelry – exemption claimed | $ 350.00 |
| Usual personal effects | $ 300.00 |

### PLAN

From the above monthly payments of $157.00, debtor will first pay her expenses of administration:

| | |
|---|---|
| Attorneys Fees | $600.00 |
| Filing Fee | $ 60.00 |

Other claims are divided into three classes—

1. Secured claims to be paid in full to value of security.

    Total        $350.00

2. Unsecured claims to be paid at 100%—

| | |
|---|---|
| Security First Bank – overdrawn account | $ 215.00 |
| Tri-Cities Industrial Credit Union – (Proof of claim is filed – security is a 1973 Chevrolet Malibu valued by creditor at $1,250. Co-signor is Ronald Briegel. No indication of whereabouts of the vehicle. Both debtor and Briegel signed the security agreement.) | $2,750.00 |
| Ottawa County Friend of the Court – child support arrearage | $ 270.00 |
| Sandra Sheffield – no reason is given why this claim is to be paid in full. Debtor was formerly known as Sheffield. | $ 500.00 |
| James Hall – no reason is given why this claim is to be paid in full. | $ 200.00 |

3. Balance of unsecured creditor claims are to be paid at 2%—

| | Amount due | 2% |
|---|---|---|
| Peoples Bank – deficiency | $326.00 | $ 6.52 |
| Security First Bank – deficiency | 374.00 | 7.48 |
| General Telephone Co. | 83.00 | 1.66 |
| Neil Stantons, Esq. | 150.00 | 3.00 |
| Hardy – Herpolsheimers | 276.00 | 5.52 |
| J. C. Penney Co. | 403.00 | 8.06 |
| Beverly's | 45.00 | .90 |
| Steketee's | 32.00 | .64 |
| Timberline Estates | 126.00 | 2.52 |
| | | 36.30 |

In *In re Hurd*, 4 B.R. 551 (Bkrtcy.W.D. Mich., 1980) I held that a 5% plan could be meaningful only under exceptional circumstances. While the debtor in this case is paying all she can and, under Chapter 7, creditors would receive nothing, a payment of $36.30 to unsecured creditors while debtor is paying $600.00 to her attorney and 100% to selected unsecured creditors, is not in good faith. See also *In re Blackwell*, 5 B.R. 748 (Bkrtcy.W.D.Mich., 1980).

In *In re Hurd*, supra, I listed all cases decided up to that time. This issue has plagued the bankruptcy courts and many cases have been decided since. It is difficult to note any clear trend. There are still some courts which hold that no payments need be made to unsecured creditors.[1] Also, 1% plans have been confirmed.[2] A 27% plan was approved[3] as was a 70% plan.[4] On the other hand, several bankruptcy courts have denied no payment plans.[5] The same is true with 1% plans.[6] A 1½ plan has been denied,[7] as has also a flat payment of $1 per creditor.[8] Also, the following plans have been denied confirmation; 6%[9], 10%[10], 28%[11]. One bankruptcy court has indicated it would confirm no plan that paid less than 70%.[12] A plan providing for 12 monthly payments of $12 each on $20,000 of unsecured debts was denied.[13] Finally, a plan calling for payments for 5 years but with no definite amount was not confirmed. *In re Nance*, 4 B.R. 50 (Bkrtcy. W.D.Mo., 1980).

Three good faith decisions have been decided on appeal. In *In re Terry*, 630 F.2d 634 (8th Cir., 1980) by a unanimous per curiam decision; the court reversed the confirmation of a no payment plan, holding "that the bankruptcy court erred in confirming the zero payment plan." At page 635 the court stated:

"We next consider the question of whether a zero payment Chapter 13 plan may be in good faith. The bankruptcy judge reasoned that a requirement of payments for 'good faith' would create difficulties, because such a requirement would necessitate a determination in every case of whether the proposed payments were sufficient for 'good faith.' We agree that a payment required would create some difficulties, because of the absence of any statutory guideline as to the minimum necessary percentage payment. However, we cannot agree that a

1.  *In re Cloutier*, 3 B.R. 584 (Bkrtcy.D.Colo., 1980); *In re Harland*, 3 B.R. 597 (Bkrtcy.D. Neb., 1980); *In re Bellgraph*, 4 B.R. 421, (Bkrtcy.W.D., N.Y., 1980).

2.  *In re Moss*, 5 B.R. 123 (Bkrtcy.M.D.Tenn., 1980); *In re Johnson*, 6 B.R. 34, 6 Bankr.Ct. Dec. 579 (Bkrtcy.N.D.Ill., 1980). In one case a 1% plan was approved but the debtor had paid $8,000 to unsecured creditors over a nine year period under a Chapter XIII case. *In re Dills*, 7 B.R. 160, 6 Bankr.Ct.Dec. 800 (Bkrtcy.E.D. Tenn., 1980).

3.  *In re Ryals*, 3 B.R. 522 (Bkrtcy.E.D.Tenn., 1980).

4.  *In re Armstrong*, 3 B.R. 615 (Bkrtcy.D.Or., 1980).

5.  *In re Manning*, 5 B.R. 387 (Bkrtcy.W.D., N.Y., 1980); *In re Lockwood*, 5 B.R. 294 (Bkrtcy. S.D., Fla., 1980); *In re Seman*, 4 B.R. 568 (Bkrtcy.S.D., N.Y., 1980); *In re Hobday*, 4 B.R. 417 (Bkrtcy.N.D.Ohio, 1980); *In re Chaffin*, 4 B.R. 324 (Bkrtcy.D.Kan., 1980); *In re Cole*, 3 B.R. 346 (Bkrtcy.S.D.W.Va., 1980); *In re Hurd*, 4 B.R. 551, 6 Bankr.Ct.Dec. 412 (Bkrtcy.N.D., Ill., 1980).

6.  *In re Coeb*, 4 B.R. 735 (Bkrtcy.S.D.Cal., 1980); *In re Montano*, 4 B.R. 535 (Bkrtcy.D.D.C., 1980); *In re McMinn*, 4 B.R. 150 (Bkrtcy.D. Kan., 1980).

7.  *In re De Simone*, 6 B.R. 89, 6 Bankr.Ct.Dec. 861 (Bkrtcy.S.D., N.Y., 1980); *In re Tanke*, 4 B.R. 339 (Bkrtcy.D.Colo., 1980).

8.  *In re Burns*, 6 B.R. 286, 6 Bankr.Ct.Dec. 980 (Bkrtcy.D.Colo., 1980).

9.  *In re Hall*, 4 B.R. 341 (Bkrtcy.E.D.Va., 1980).

10.  *In re Johnson*, 5 B.R. 40 (Bkrtcy.S.D.Ohio, 1980); *In re Murallo*, 4 B.R. 666 (Bkrtcy.D. Conn., 1980).

11.  *In re White*, 4 B.R. 349 (Bkrtcy.E.D.Va., 1980).

12.  *In re Raburn*, 4 B.R. 624 (Bkrtcy.M.D.Ga., 1980).

13.  *In re Schongalla*, 4 B.R. 360 (Bkrtcy.D.Md., 1980).

Chapter 13 plan to pay nothing may be in good faith. Such a plan amounts to an abuse of § 1328 (granting a more generous discharge than Chapter 7) and of the spirit of the chapter, that the debtor 'make payments' under a plan. See *In re Campbell*, 3 B.R. 57, 59, 5 B.C.D. 1365, 1366 (Bkrtcy.S.D.Cal.1980); *In re Iacovoni*, 2 B.R. 256, 262, 5 B.C.D. 1270, 1272 (Bkrtcy.D.Utah 1980)."

A somewhat unique decision was *In re Coleman*, 5 B.R. 812 (Bkrtcy.W.D.Ky., 1980) where an appeal was taken from confirmation of a plan which proposed to pay $1 to each unsecured creditor. In reversing the Bankruptcy Court, the District Court noted that after making her payments under the plan, the debtor would have only $4 available and held that with this small amount in reserve, the plan was not feasible and was not filed in good faith.

In *In re Burrell*, 6 B.R. 360, 6 Bankr.Ct. Dec. 900 (D.C.N.D.Cal., 1980), the district judge reversed the bankruptcy judge who had held that any plan paying less than 70% to unsecured creditors would not be in good faith. The district judge held that it was error to impose so rigid a test, but did state that a plan to be in good faith must provide for *substantial* payments to unsecured creditors.

Reviewing these recent cases, I find no reason to change the standards set forth in *In re Hurd, supra*. Here the debtor proposed to pay certain chosen creditors 100% but the rest only 2%. Such a variance cannot be in good faith. But even without the difference in treatment of classes of unsecured creditors, a 2% payment cannot be said to be either a "substantial" or "meaningful" payment.

The plan is denied confirmation. The case will be adjourned for a determination by the debtor as to whether she desires to amend her plan, convert it to a Chapter 7 case or submit to a dismissal of this case.